UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

JILL ANN MURRAY,

*Defendant*.

Criminal No. 16-176 (RDM)

**MEMORANDUM OPINION AND ORDER**

On April 24, 2018, the Court held a status conference to discuss Defendant Jill Murray's supervised release. At the request of Murray's counsel, a portion of that status conference occurred at the bench. Subsequently, a third party requested a copy of the transcript of the proceeding. *See* Dkt. 52. Based on the understanding that portions of the transcript might "contain information that is confidential in nature," the Court provided the parties with the opportunity to move to seal portions of the transcript. Minute Order (Apr. 25, 2018). In response, Murray moved for an order sealing the entire portion of the transcript from the bench conference, asserting that she has a compelling privacy interest in the matters discussed and that those matters are of little or no public interest. Dkt. 49. Because a third party had requested a copy of the transcript, and in light of the "strong presumption in favor of public access to judicial proceedings," *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991), the Court offered "[a]ny party or third[ ]party" the opportunity to oppose Murray's motion, Minute Order (May 8, 2018). Rather than oppose Murray's motion, the United States filed a timely response in which it joined in Murray's request to seal the designated portion of the transcript. Dkt. 51 at 4. Although recognizing the importance of public access, the United States

agreed with Murray that "the portions of the record at issue have no bearing on the victim in the case or [on] any specifically identifiable public interest." *Id.* at 2.

Murray's estranged husband, Sacha Rosen, however, filed a brief opposing Murray's motion to seal. Dkt. 52. In his words, "[a]s Murray's husband, guardian of their children, and one of several persons substantially impacted by her crime and subsequent compliance with supervised release conditions," he "has a strong interest in the proceedings before this Court." *Id.* at 1. Rosen further explained that he "follows the proceedings in this Court closely to learn a) whether Ms. Murray continues to comply with the conditions of her supervised release pertaining to the treatment of substance abuse and mental health issues, b) how Ms. Murray's restitution to the victims of her crimes may affect their shared assets, and c) whether Ms. Murray has made any representations to this Court that may directly or indirectly impact their children." *Id.* at 2. In her reply brief, Murray argues that she and Rosen "are involved in bitter divorce proceedings," Dkt. 53 at 1, that in the status conference this Court merely addressed "how [she] is doing on supervised release," *id.*, and that permitting Rosen to use statements made in that context to fuel their domestic relations dispute will have the effect of chilling Murray in future discussions relating to her personal life and supervised release, *see id.* at 4, 6.

## I. ANALYSIS

"[T]he starting point in considering a motion to seal court records is a 'strong presumption in favor of public access to judicial proceedings.'" *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (quoting *Johnson*, 951 F.2d at 1277). That presumption recognizes that "[t]he right of public access is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent judiciary." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017). It "promote[s]

trustworthiness of the judicial process, . . . curb[s] judicial abuses, and . . . provide[s] the public with a more complete understanding of the judicial system, including a better perception of fairness." *In re Application of Jason Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, 300 F. Supp. 3d 61 (D.D.C. 2018) (quoting *Doe v. Pub. Citizen*, 749 F.3d 246, 266 (4th Cir. 2014)). Although the presumption is a "strong" one, it is "not absolute," *id.*, and it "may be outweighed in certain cases by competing interests," *Metlife*, 865 F.3d at 665.

To assist courts in assessing when the presumption gives way, the D.C. Circuit established a six-factor test in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980). That test—the "*Hubbard* test"—requires that courts weigh:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Nat'l Children's Ctr.*, 98 F.3d at 1409 (citing *Hubbard*, 650 F.2d at 317–22). Applying this test, the Court concludes that the transcript should be released in part.

1. *Need for Public Access*

As the D.C. Circuit recognized in *Hubbard*, not all judicial records and proceedings are created equal. 650 F.2d at 317. In some circumstances, such as "the courtroom conduct of a criminal trial," the First Amendment requires public access. *Id.* In others, the common law may place a premium on public access. *Id.* And, in still others, the public interest in access may be minimal. *Id.* Although no precise formula controls in all cases, the public's interest is heightened when disclosure would "allow the public to understand the rulings as well as the contours of the disputes between the parties." *Hyatt v. Lee*, 251 F. Supp. 3d 181, 184 (D.D.C. 2017). Thus, for example, there is a strong public interest in access to documents "introduced as

evidence of guilt or innocence in a trial," and in documents relied upon by a court in reaching a decision on questions of importance. *Hubbard*, 650 F.2d at 317. In contrast, the public interest in more peripheral matters, such as documents "seized from a third party nondefendant" and subsequently "introduced by the defendants solely to show the overbreadth of a search," *id.* at 295, 317, is less compelling.

Here, Murray has already served her sentence, and the discussion at the bench principally involved a recommendation from the probation officer about Murray's ongoing supervision. The Court did not enter an order or modify the terms of Murray's supervised release, nor was there any discussion of any violation of the terms of supervised release. The Court was not presented with any evidence or legal argument. And, the recommendation that the probation officer made was similar to the type of reports that the probation office typically makes to the Court under seal. *See, e.g.*, *United States v. Harrison*, No. 92-543-1, 2003 WL 21027286, at *1 (E.D. Pa. May 7, 2003) ("United States probation files are confidential court records compiled in the course of fulfilling court-ordered responsibilities; a probation officer must be authorized by the court to release information from the presentence investigation report or probation files to third parties."); *see also United States v. Munir*, 953 F. Supp. 2d 470, 476–77 (E.D.N.Y. 2013) (describing how probation offices confidentially provide information to courts). The Court does not doubt that Rosen has a strong, personal interest in these proceedings, but that interest bears most fundamentally on the divorce proceedings between him and Murray, which are pending in state court in South Carolina. It goes without saying that those divorce proceedings lie well beyond the jurisdiction of this Court. Moreover, and more importantly, Rosen has failed to explain how his *personal* interest in gathering information involving his estranged spouse relates

to the *public* interest in understanding the judicial process and how this Court discharges its duties.

In one limited respect, however, the discussion at the bench conference did disclose information of significant public interest; in particular, the parties disclosed that the Marshals Service had received a check from Murray for $96,148.17, which it will convey in due course to the victims of Murray's criminal conduct. The public has an interest in knowing that a substantial portion of this Court's restitution order has been satisfied.

The Court, accordingly, concludes there is a significant public interest in the disclosure of the amount of the restitution payment. In all other respects, however, the Court concludes that the need for public access to the transcript of the bench conference is, if anything, less substantial than the public interest in access to the sealed records that the *Hubbard* court deemed to be of "only modest[]" public interest. 650 F.2d at 318.

2. *Extent of Previous Public Access*

The second factor—"the extent of previous public access"—weighs in favor of releasing some portions of the transcript and against releasing others. Much of the discussion at the bench repeated assertions and allegations that appear elsewhere on the public record. Murray, for example, has previously expressed an interest in moving back to Charleston, South Carolina, Dkt. 43 (9:4–5); she has expressed the belief that Rosen falsely accused her of shoplifting, *id.* (14:20–22); and she has explained that, if she receives funds as part of her divorce, she will be able to pay more of the restitution the Court has ordered that she pay, *id.* (14:16–17).

Other matters discussed at the bench conference, however, are not already a matter of public record. Most significantly, the probation officer provided the Court with a report on Murray's progress and made a recommendation at the bench. Neither that report nor the accompanying recommendation have been made public to date, and reports and

5

recommendations of this type from the probation office are typically treated as confidential. *See Harrison*, 2003 WL 21027286 at *1; *cf. Munir*, 953 F. Supp. 2d at 476–77. The parties agree that, if and when the Court acts on the probation officer's recommendation, that judicial act will be made public.

3.    *Objection to Disclosure*

Third, the Court must take into account "the fact that someone has objected to disclosure, and the identity of that person." *Nat'l Children's Ctr.*, 98 F.3d at 1409. Murray has moved to seal the transcript, *see* Dkt. 49, and the government agrees that the transcript should be sealed, *see* Dkt. 51. Although not dispositive, this factor weighs in favor of nondisclosure.

4.    *Strength of Privacy Interests*

The fourth *Hubbard* factor requires that the Court "assess the strength of any property or privacy interests voiced by the moving party." *United States v. Harris*, 204 F. Supp. 3d 10, 17 (D.D.C. 2016) (quoting *U.S. ex rel. Durham v. Prospect Waterproofing, Inc.*, 818 F. Supp. 2d 64, 68 (D.D.C. 2011)). "[U]nder this factor, the party seeking to avoid disclosure must identify specific privacy interests in the documents at issue." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 94 (D.D.C. 2014). For the most part, Murray has done so. She has explained that much of the information discussed with the Court involved issues that are "very personal to [her] well-being" and are "of a private character." Dkt. 51 at 3. The Court agrees that Murray has a strong privacy interest in those portions of the transcript that do not relate to matters that were previously disclosed and do not address the restitution payment.

5.    *Possibility of Prejudice*

"The fifth *Hubbard* factor considers whether disclosure of the documents will lead to prejudice in future litigation to the party seeking the seal." *Friedman v. Sebelius*, 672 F. Supp. 2d 54, 60 (D.D.C. 2009). From Rosen's perspective, he will not suffer any meaningful prejudice

6

by virtue of sealing those portions of the transcript that discuss matters that are not already public and that do not relate to Murry's payment of restitution. Rosen is not a party to this case and thus will not be prejudiced by the Court's consideration of information shared with it at the bench conference. Moreover, although Rosen might—conceivably—be able to use some of the information at issue in his divorce case, the Court is unconvinced that the portion of the discussion that is not already public is likely to have any material bearing on that case. Murray, on the other hand, plausibly contends that disclosure will chill her ability openly to engage with the Court regarding personal issues affecting her supervised release. Such open discussion is essential when the Court is in the position of monitoring a defendant's progress on supervised release. The Court must be able to inquire as to personal matters and conduct candid conversations in order to ensure that the defendant meets the terms of his or her supervised release, does not recidivate, and is able to transition back into society. It is reasonable, moreover, to expect a chilling effect on those open discussions if they became part of a separate divorce proceeding.

The Court, accordingly, finds that this factor weighs in favor of nondisclosure of those portions of the transcript that go beyond matters previously disclosed.

6. *Purpose of the Information*

The final factor requires the Court to consider "the purpose for which the documents [or information] in question were introduced." *Harris*, 204 F. Supp. 3d at 17. "The more relevant a pleading is to the central claims of the litigation, the stronger the presumption of unsealing the pleading becomes." *Id.* at 17–18. This factor "focuses on the [movant's] purpose of filing his pleadings and nothing further." *Durham*, 818 F. Supp. 2d at 69 (emphasis omitted). The information relayed at the bench conference was not relevant to Murray's conviction or plea or to any other issue of general public importance. More importantly, as the government notes, the

7

information was provided to the Court "for informational purposes" only. Dkt. 51 at 3. The Court has not modified the terms of Murray's supervised release, and if in the future the Court does so, it will explain its reasoning on the public record, including any relevant information discussed at the bench conference.

This factor, therefore, weighs in favor of maintaining the seal on at least the most private information discussed at the bench conference.

\* \* \*

In sum, given the "strong presumption" in favor of disclosure, the fact that much of the information discussed at the bench conference is already public, and the public interest in disclosing information regarding payment of restitution, the Court finds that the following portions of the transcript should be released: Apr. 24, 2018 Hrg. Tr. at 1, (2:1–4:11 word 9[1]), (5:22–6:22), (8:11–9:4), (9:15–16 word 4), (9:20–10:9 word 3), (10:12–13), (10:15 word 4–11:5), (11:7–12:5 word 8), (12:21 word 4–12:25), (13:11–14:11), 15. However, because other portions of the discussion did not involve issues of significant public interest, have not been previously disclosed, and implicate significant privacy interests, the Court finds that the following portions of the transcript should be placed under seal pending further order of the Court: Apr. 24, 2018 Hrg. Tr. (4:11 word 10–5:21), (6:23–8:10), (9:5–9:14), (9:16 word 5–9:19), (10:9 word 4–10:11), (10:14–15 word 3), (11:6), (12:5 word 9–12:21 word 3), (13:1–10). The identities of speakers throughout the transcript will remain unsealed, even where what they have said is sealed. The entire index, Apr. 24, 2018 Hrg. Tr. at 16–20, will be withheld.

---

[1] These word counts are not inclusive of any reference to the speaker.

## CONCLUSION

Defendant's motion to seal portions of the transcript, Dkt. 49, is **GRANTED** in part and **DENIED** in part.

    **SO ORDERED**.

    /s/ Randolph D. Moss
    RANDOLPH D. MOSS
    United States District Judge

Date: June 15, 2018